Michael J. Riccobono, Esq.
Cynthia M. Vera, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 656-1600
Fax:  (973) 656-1611
michael.riccobono@ogletree.com
cynthia.vera@ogletree.com
*Attorneys for Defendants*
*Mitchell/Martin, Inc. and Ellen Stieve*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

--------------------------------------------------

|  |  |  |
|---|---|---|
| WINIFRED EGAN and JENNIFER DUNKLIN-DORAZIO, | : | Hon. _____ |
|  | : | Case No.: _____ |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : | **NOTICE OF REMOVAL** |
| REGENERON PHARMACEUTICALS INC., MITCHELL MARTIN, INC., VINCENT CANTARELLA, Individually, and ELLEN STIEVE, Individually, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

--------------------------------------------------

**TO:   CHIEF JUDGE AND JUDGES OF**
**THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**HONORABLE JUDGES**:

Defendants Mitchell/Martin, Inc. (incorrectly pled as "Mitchell Martin, Inc.") ("MMI")

and Ellen Stieve (collectively, "Defendants"), by and through their counsel, Ogletree, Deakins,

Nash, Smoak & Stewart, P.C., hereby notice the removal of this action pursuant to 28 U.S.C.

§1331, §1367, §1441 and § 1446, *et seq.*, from the Superior Court of New Jersey, Somerset

County, to the United States District Court for the District of New Jersey, and as grounds therefore states:

## TIMELINESS OF REMOVAL

1.      On February 25, 2022, Plaintiffs Winifred Egan and Jennifer Dunklin-Dorazio ("Plaintiffs") filed a civil action against Defendants in the Superior Court of New Jersey, Somerset County, entitled *Winifred Egan, et al. v. Regeneron Pharmaceuticals Inc., et al.,* Docket No. SOM-L-0231-22 ("the State Court Action"). Copies of the Complaint, Case Information Statement, and Track Assignment Notice are attached as **Exhibit A**, as required under 28 U.S.C. § 1446(a). These are the only process, pleadings, and orders served on Defendants (or the other Defendants) in this action.

2.      Defendants accepted service of the Complaint on March 7, 2022.

3.      To date, Defendants (and the other Defendants) have not filed a responsive pleading in the State Court Action, and no other proceedings have transpired in that action.

4.      Accordingly, Defendants are timely filing this Notice of Removal within 30 days after service of process, as required by 28 U.S.C. § 1446(b).

## VENUE

5.      The Superior Court of New Jersey, Somerset County, is located within the District of New Jersey. *See* 28 U.S.C. § 110. Therefore, venue for purposes of removal is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## BASIS FOR REMOVAL

6.      This action is properly removable under 28 U.S.C. § 1441(a) because the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides that

"[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7.     Plaintiffs' Complaint alleges that the Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and asserts related claims under the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a *et seq.* ("NJWHL"); the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1 *et seq.*; the New Jersey Earned Sick Leave Law ("NJESLL"), N.J.S.A. § 34:11D-2 *et seq.*; the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-12 *et seq.* ("NJLAD"); and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*  (*See* Exhibit A.)

8.     By asserting a claim under federal law, namely, the FLSA, Plaintiffs' Complaint asserts a federal question under 28 U.S.C. § 1331.  Accordingly, this case is properly removable under 28 U.S.C. § 1441(a).

## SUPPLEMENTAL JURISDICTION

9.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under the NJLAD, NJWHL, NJWPL, NJESLL, and NYLL.  (*See* Exhibit A, at Counts One, Two, and Five through Eight.)

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims that are so related to Plaintiffs' federal cause of action "that they form part of the same case or controversy under Article III of the United States Constitution."  State law claims fall within this Court's supplemental jurisdiction when they share with the federal claims "a common nucleus of operative fact … such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

11.     Here, Plaintiffs' state law claims under the NJLAD, NJWHL, NJWPL, NJESLL, and NYLL relate closely to her claim under the FLSA because these claims all arise out of a common nucleus of operative facts—that is, Plaintiffs' employment with MMI and their assignment to provide services to Regeneron (MMI's client), including allegations of alleged joint employment common to the claims.  Therefore, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.     Moreover, there is no reason why this Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims.  Plaintiffs' state law claims neither raise novel or complex issues of state law nor predominate over the claims over which this Court has original jurisdiction, and there are no exceptional circumstances or other compelling reasons for this Court to decline supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c).  Thus, removal is proper under 28 U.S.C. § 1441(c).

### CONSENT OF ALL DEFENDANTS

13.     All properly joined and served Defendants have consented to the removal of this action.  (*See* **Exhibit B**.)

### SERVICE UPON PLAINTIFF

14.     In accordance with 28 U.S.C. §1446, copies of this Notice of Removal will be promptly served upon counsel for Plaintiffs and filed with the Clerk of the Superior Court of New Jersey and the Clerk of the Superior Court in Somerset County, New Jersey.  A copy of Defendants' Notice of Filing to the State Court is attached hereto as **Exhibit C**.

### NO WAIVER OF DEFENSES

15.     By removing this matter, Defendants do not waive or intend to waive any defense, including but not limited to insufficiency of process and insufficiency of service of process.

**WHEREFORE**, Defendants respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove it from the Superior Court of New Jersey, County of Somerset, to the United States District Court for the District of New Jersey.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

By: */s/ Michael J. Riccobono*
Michael J. Riccobono, Esq.
Cynthia M. Vera, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600

Dated: April 6, 2022

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

I, Michael J. Riccobono, Esq., counsel for Defendants Mitchell/Martin, Inc. (incorrectly pled as "Mitchell Martin, Inc.") and Ellen Stieve, certify that the matter in controversy is not the subject of any other action pending in any court nor any pending arbitration or administrative proceeding.

By: */s/ Michael J. Riccobono*
Michael J. Riccobono


Dated:  April 6, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2022, the foregoing Notice of Removal was electronically filed with this Court and served *via* FedEx overnight delivery upon:

Michael R. DiChiara, Esq.
Krakower DiChiara LLC
333 Bloomfield Ave., Suite 202
Caldwell, New Jersey 07006
*Attorneys for Plaintiffs*

Somerset County Civil Division Clerk
Superior Court of New Jersey
Somerset County Courthouse
20 North Bridge Street
Somerville, New Jersey 08876

Michelle Smith, Esq., Clerk
Superior Court Clerk's Office
R.J. Hughes Justice Complex
P.O. Box 971
Trenton, New Jersey 08625

By: */s/ Michael J. Riccobono*
     Michael J. Riccobono, Esq.
     OGLETREE, DEAKINS, NASH,
     SMOAK & STEWART, P.C.
     10 Madison Avenue, Suite 400
     Morristown, New Jersey 07960
     Telephone: (973) 656-1600

# EXHIBIT A

Michael R. DiChiara (NJ ID # 010021998)
Krakower DiChiara LLC
333 Bloomfield Ave., Suite 202
Caldwell, NJ 07006
Telephone: 201-746-0303
Fax: 347-765-1600

*Attorneys for Plaintiffs*

-------------------------------------------------------x

WINIFRED EGAN and JENNIFER
DUNKLIN-DORAZIO,

|  |  |
|---|---|
| Plaintiffs, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY |
| -against- |  |
|  | Complaint |

REGENERON PHARMACEUTICALS INC.,
MITCHELL MARTIN, INC., VINCENT
CANTARELLA, Individually, and ELLEN
STIEVE, Individually,

                                   Defendants.
-------------------------------------------------------x

Plaintiff WINIFRED EGAN ("Egan") and Plaintiff JENNIFER DUNKLIN-DORAZIO,

("Dunklin-Doraizo") by and through their attorneys, upon personal knowledge as to themselves

and upon information and belief as to other matters, brings this Complaint against Defendant

REGENERON PHARMACEUTICALS INC. ("Regeneron"), Defendant MITCHELL MARTIN,

INC. ("MMI"), Defendant VINCENT CANTARELLA ("Cantarella"), and Defendant ELLEN

STIEVE ("Stieve"), and alleges as follows:

## INTRODUCTION

1.     Plaintiffs bring this lawsuit seeking recovery against Defendants for violations of

the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*; the New Jersey

1

Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1 *et seq.*; the New Jersey Paid Sick Leave Law ("PSLL"), N.J.S.A. § 34:11 D-2 *et seq* ; and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD").

2.      Plaintiff Dunklin-Dorazio additionally brings this lawsuit seeking recovery against Defendants for Defendants' violations of the New York Labor Law, N.Y. Lab. Law §§ 650, *et seq.* ("NYLL").

3.      Plaintiffs additionally bring this lawsuit seeking recovery against Defendants for violations of the Fair Labor Standards Act ("FLSA").

4.      Plaintiffs seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to state law.

## PARTIES

### Defendant Regeneron

5.      All actions and omissions described in this Complaint were made by Defendant Regeneron directly and/or through Defendant Regeneron's supervisory employees and agents.

6.      Defendant Regeneron's actions and omissions described in this Complaint and causing injury to Plaintiffs were done knowingly and willfully.

7.      Defendant Regeneron is a foreign profit corporation organized under the laws of New York and doing business in the State of New Jersey, and within Somerset County, as a healthcare company.

8.      Defendant Regeneron maintains a principal business address, a main business address, and executive offices at 777 Old Saw Mill River Rd, Tarrytown, New York 10591.

9.      Defendant Regeneron maintains a business within New Jersey at: 110 Allen Rd, Basking Ridge, NJ 07920.

2

10.     At all times relevant to this Complaint Defendant Regeneron was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiffs.

11.     At all times relevant to this Complaint Defendant Regeneron was and is an employer within the meaning of the NJWPL, N.J.S.A. 34:11-4.1, and employed employees, including Plaintiffs.

12.     At all times relevant to this Complaint, Defendant Regeneron was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

13.     At all times relevant to this Complaint, Defendant Regeneron was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiffs.

14.     At all times relevant to this Complaint, Defendant Regeneron has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

15.     At all times relevant to this Complaint, Defendant Regeneron was and is an employer within the meaning of the NYLL § 190(3) and § 651(6) and employed Plaintiff Dunklin-Dorazio.

16.     Defendant Regeneron is a pharmaceutical company.

**Defendant MMI**

17.     All actions and omissions described in this Complaint were made by Defendant MMI directly and/or through Defendant MMI's supervisory employees and agents.

18.     Defendant MMI's actions and omissions described in this Complaint and causing injury to Plaintiffs were done knowingly and willfully.

3

19.     Defendant MMI is a foreign profit corporation organized under the laws of New York and doing business in the State of New Jersey, and within Somerset County.

20.     Defendant MMI maintains a principal business address, a main business address, and executive offices at 550 7th Ave, 16th Floor, New York, NY 10018.

21.     Defendant MMI maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 42, Woodbridge, NJ 07095.

22.     At all times relevant to this Complaint Defendant MMI was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiffs.

23.     At all times relevant to this Complaint Defendant MMI was and is an employer within the meaning of the NJWPL, N.J.S.A. 34:11-4.1, and employed employees, including Plaintiffs.

24.     At all times relevant to this Complaint, Defendant MMI was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

25.     At all times relevant to this Complaint, Defendant MMI was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiffs.

26.     At all times relevant to this Complaint, Defendant MMI has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

27.     At all times relevant to this Complaint, Defendant MMI was and is an employer within the meaning of the NYLL § 190(3) and § 651(6) and employed Plaintiff Dunklin-Dorazio.

28.     Defendant MMI is a staffing agency.

4

**Defendant Vincent Cantarella**

29.     Upon information and belief, Defendant Cantarella was a manager and/or director of Defendant Regeneron.

30.     At all times relevant to this Complaint, Defendant Cantarella was Plaintiff Egan's supervisor.

31.     At all times relevant to this Complaint, Defendant Cantarella was Plaintiff Dunklin-Dorazio's supervisor.

32.     At all times relevant to this Complaint, Defendant Cantarella had power over personnel decisions at Defendant Regeneron, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

33.     Upon information and belief, at all times relevant to this Complaint, Defendant Cantarella had the power to determine employee policies at Defendant Regeneron, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

34.     Upon information and belief, at all times relevant to this Complaint, Defendant Cantarella was actively involved in managing the day-to-day operations of Defendant Regeneron.

35.     At all times relevant to this Complaint Defendant Cantarella was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiffs.

36.     At all times relevant to this Complaint Defendant Cantarella was and is an employer within the meaning of the NJLAD, and employed employees, including Plaintiffs.

5

37.     At all times relevant to this Complaint, Defendant Cantarella was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiffs.

38.     At all times relevant to this Complaint, Defendant Cantarella was and is a covered employer within the meaning of the NYLL and, at all times relevant to this Complaint, employed Plaintiff Dunklin-Dorazio.

**Defendant Ellen Stieve**

39.     Upon information and belief, Defendant Stieve was a manager and/or director of Defendant MMI.

40.     At all times relevant to this Complaint, Defendant Stieve was Plaintiff Egan's supervisor.

41.     At all times relevant to this Complaint, Defendant Stieve was Plaintiff Dunklin-Dorazio's supervisor.

42.     At all times relevant to this Complaint, Defendant Stieve had power over personnel decisions at Defendant MMI, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

43.     Upon information and belief, at all times relevant to this Complaint, Defendant Stieve had the power to determine employee policies at Defendant MMI, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

44.     Upon information and belief, at all times relevant to this Complaint, Defendant Stieve was actively involved in managing the day-to-day operations of Defendant MMI.

45.     At all times relevant to this Complaint Defendant Stieve was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiffs.

46.     At all times relevant to this Complaint Defendant Stieve was and is an employer within the meaning of the NJLAD, and employed employees, including Plaintiffs.

47.     At all times relevant to this Complaint, Defendant Stieve was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiffs.

48.     At all times relevant to this Complaint, Defendant Stieve was and is a covered employer within the meaning of the NYLL and, at all times relevant to this Complaint, employed Plaintiff Dunklin-Dorazio.

**Plaintiffs**

49.     At all times relevant to this action, Plaintiff Egan was an adult resident of Hackettstown, New Jersey.

50.     Plaintiff Egan was employed from March 18, 2019 through March 19, 2021, when she was wrongfully terminated.

51.     At all times relevant to this action, Plaintiff Dunklin-Dorazio was an adult resident of West Orange, New Jersey.

52.     Plaintiff Dunklin-Dorazio began working for the Companies on March 12, 2018, and she continues to be employed by them.

53.     At all times relevant to this Complaint, Plaintiffs were employees of Defendants.

54.     At all times relevant to this Complaint Plaintiffs performed their duties fully, effectively, faithfully, and efficiently.

7

55.     At all times relevant to this Complaint, Plaintiffs met or exceeded all reasonable business expectations as employees within Defendants' workforce.

## FACTUAL ALLEGATIONS

**Plaintiffs' Joint Employment with Defendants**

56.     Plaintiff Egan and Plaintiff Dunklin-Dorazio have been jointly employed by Defendants.

57.     Both Plaintiffs were hired by MMI to perform Senior Program/Project Management duties exclusively at Regeneron.

58.     Pursuant to Employee Service Agreements (the "Agreements"), Plaintiffs were compensated on an hourly basis.

59.     Plaintiffs were not paid on a salary basis.

60.     From the start of Plaintiff Egan's employment until March 2020, Plaintiff Egan worked on-site at Regeneron's Basking Ridge, New Jersey location three to four days per week and from her home in New Jersey for the remainder of the week.

61.     After March 2020, and as a result of the COVID shutdown, Plaintiff Egan worked exclusively from her home in New Jersey.

62.     Plaintiff Dunklin-Dorazio initially worked on-site at Regeneron's Tarrytown, New York office approximately one or two days per week and worked from her home in New Jersey for the remainder of the week.

63.     From late 2019 until March 2020, Plaintiff Dunklin-Dorazio worked on-site at Regeneron's Tarrytown, New York office three days per week.

64.     From March 2020 to the present, Plaintiff Dunklin-Dorazio has worked exclusively from her home in New Jersey.

65.     Prior to being hired, Plaintiffs interviewed with management at both MMI and Regeneron.

66.     Plaintiffs worked on the same team, under the direct supervision of Defendant Cantarella.

67.     On a day-to-day basis, Plaintiffs reported to supervisors at Regeneron, performed the same duties as Regeneron employees, utilized Regeneron email addresses, used Regeneron-issued equipment to perform their jobs, and held themselves out as Regeneron employees to Regeneron's clients and customers.

68.     Though Plaintiffs were managed by Regeneron employees on a daily basis, they also had regular check-ins with Defendant Stieve, Account Manager for MMI.

69.     If Plaintiffs were unable to work due to illness or any other reason, they were required to notify their supervisors at both Regeneron and MMI of their absence.

70.     Further, Plaintiffs' weekly timesheets had to be approved first by their supervisors at Regeneron, and then by their supervisors at MMI.

71.     At all times relevant to this Complaint, Defendant Regeneron and Defendant MMI were joint employers, and these Defendants jointly employed Plaintiffs.

72.     At all times relevant to this Complaint, the Defendant Regeneron exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiffs were subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiffs, the issuance of work assignments and instructions, and the supervision of Plaintiffs' day-to-day activities.

73.     At all times relevant to this Complaint, the Defendant MMI exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiffs were

subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiffs, the issuance of work assignments and instructions, and the supervision of Plaintiffs' day-to-day activities.

74.     At all times relevant to this Complaint, the Defendants exercised common control over supervision of Plaintiffs.

75.     Defendant Regeneron is a client of Defendant MMI.

76.     At all times relevant to this Complaint, Defendant MMI has provided workers to Defendant Regeneron.

77.     Defendant Regeneron is a client employer pursuant to NJWHL.

**Plaintiffs Were Subject to Defendants' Unlawful Pay Policy that Denied Them Overtime Pay**

78.     Throughout Plaintiffs' employments, Defendants failed to properly compensate them for all hours worked.

79.     Plaintiffs consistently worked far in excess of forty (40) hours each week.

80.     However, Defendants failed to compensate Plaintiffs for all hours worked in excess of forty (40) in a week.

81.     Defendants failed to properly compensate Plaintiffs for all hour worked pursuant to an unlawful pay policy.

82.      Upon Plaintiffs' hire, Stieve informed Plaintiffs that they would rarely be required to work overtime hours but, in the event that they do work more than 40 hours in a week, Plaintiffs would be appropriately compensated with overtime.

83.     Despite Stieve's assurances, Cantarella—Plaintiffs' supervisor at Regeneron—made it clear at the start of their employment that they would sometimes be required to work more than forty hours per week, and that those hours over forty would be unpaid.

84. Specifically, on Plaintiff Egan's first day at Regeneron, Cantarella told Plaintiff Egan that she would not be paid overtime for hours worked beyond 40 in a week due to "budgetary concerns".

85. Thus, Defendants were requiring Complainants to work overtime yet unlawfully refused to pay overtime.

86. Cantarella directed Plaintiff Egan and Plaintiff Dunklin-Dorazio not to include any overtime hours on their timesheets.

87. Plaintiffs were instructed by Regeneron to record no more than 8 hours per day on their timesheets, and no more than 40 hours per week.

88. If Plaintiffs submitted time sheets reflecting more than 8 hours of work in a day or more than 40 hours of work in a week, Regeneron and MMI would reject Plaintiffs' timesheet.

89. Cantarella explained to Plaintiffs that Defendants utilized a "comp time" program whereby employees who work more than 40 hours in a week could "bank" their unpaid overtime hours to use at a later time in the event they worked less than forty hours in a week.

90. Defendants' illegal compensation practices were referred to by various names, including but not limited to a "giveback program."

91. Beginning in or about early April 2020, Cantarella occasionally directed Plaintiff Dunklin-Dorazio to "bill him", meaning that she was to take her "banked" overtime or "overage" hours and apply those hours to a day in which she worked fewer than 8 hours.

92. However, Plaintiff Dunklin-Dorazio rarely worked fewer than 8 hours in a day and infrequently was able to "bill" Cantarella.

93. Shortly after Plaintiffs began working for Defendants, they learned that overtime was a major part of their jobs in stark contrast to representations made by Stieve and Cantarella.

94.     Due to project requirements, Plaintiffs were regularly required to work 12-hour days in addition to weekends to keep projects on schedule.

95.     Despite working a significant number of overtime hours, Defendants refused to compensate them for those hours.

96.     Defendants had actual and/or constructive knowledge that Plaintiffs were working unpaid hours.

97.     Plaintiffs routinely worked in excess of 20 unpaid overtime hours in a week and, often, significantly more.

98.     Plaintiff Egan estimates that she worked approximately 703 unpaid overtime hours during her employment.

99.     Plaintiff Dunklin-Dorazio estimates that she was worked 1433 unpaid overtime hours to date.

100.    Defendants were fully aware of the significant number of unpaid overtime hours Plaintiffs were required to work.

101.    Notably, because many of Regeneron's clients were in a different time zone, Plaintiffs were frequently required to attend meetings in the early morning and late evening.

102.    On days Plaintiffs worked on-site at Regeneron's offices, Plaintiffs regularly attended meetings from home before going into the office, worked a full workday at the office, worked while they were on their way home from the office by having phone calls, and then continued to work upon their return home in the evening, including more meetings, phone calls, and email correspondence.

103.    Cantarella was often involved in the early morning and late evening meetings, and Plaintiffs frequently copied him on emails sent outside of normal work hours.

12

104.    Similarly, MMI was fully aware of the hours Plaintiffs worked.

105.    Plaintiffs had regular "touch base" meetings with Stieve.

106.    During Plaintiffs' "touch base" meetings with Stieve, Plaintiffs complained about the long hours they were required to work without pay.

107.    Stieve acknowledged Plaintiffs were working a significant number of hours but did not offer to remedy the unlawful pay practices and compensate Plaintiffs with overtime pay.

108.    Cantarella stated during team meetings that the workweek is 45 hours long and that he expected employees to work through their lunch breaks.

109.    In fact, Cantarella prepared and presented a PowerPoint presentation to Plaintiffs and their coworkers regarding the expectation that Plaintiffs work at least 45 hours per week.

110.    Thus, Plaintiffs were mandated to work *at least* 5 unpaid overtime hours each week.

111.    While Defendants have entirely refused to compensate Plaintiffs overtime for the hours they have worked on a daily basis, Defendants have—on rare occasions—paid Plaintiffs additional pay for special project needs.

112.    For example, on one occasion, Defendants compensated Plaintiff Egan additional hours for time spent engaging in project testing that necessarily was required to take place on a weekend.

113.    On the rare occasion Plaintiffs did receive some additional pay, they were only ever paid at their straight-time rate despite being entitled to an overtime rate.

**Plaintiffs Complained to the Companies About Unpaid Overtime, and the Companies Retaliated Against Them in Reponses to Their Complaints**

114.    Plaintiffs repeatedly complained to Defendants that they were being forced to work unpaid overtime hours.

13

115.    Yet, Defendants refused to take any action to remedy the unlawful pay practices and continued to require Plaintiff to work without pay.

116.    Further, Defendants retaliated against Plaintiff.

**Plaintiff Egan's Complaints and Retaliation**

117.    Plaintiff Egan required medical leave from February 2020 to April 2020 due to emergency heart surgery and subsequent recovery.

118.    Upon Plaintiff Egan's return to work, Jim Czubachowski, a supervisor at Regeneron, became her direct manager, and she continued to indirectly report to Cantarella.

119.    However, following Plaintiff Egan's medical leave from February 2020 to April 2020 and in retaliation for having taken medical leave, Plaintiff Egan returned to a substantially larger workload that required her to work even more overtime.

120.    Specifically, Plaintiff Egan learned that while she was out on protected medical leave due to emergency heart surgery and subsequent recovery, Defendants failed to assign her workload to any other project manager in her absence and no progress had been made on her projects.

121.    Regeneron nevertheless demanded that Plaintiff Egan complete the project within the original timeframe despite the fact that she had missed 6 weeks of work because of her medical condition.

122.    As a result, Plaintiff Egan was required to work multiple 12-hour workdays per week and on weekends from April through December 2020 to keep the project on track.

123.    Even with Plaintiff Egan openly working excessive amounts of unpaid overtime, Regeneron's management chastised Plaintiff Egan for not working *more* hours to speed up the project's approval and completion.

14

124.    As the additional hours continued to take a toll on her, Plaintiff Egan repeatedly complained about unpaid overtime hours to Stieve and implored Stieve to contact Regeneron to resolve the issue.

125.    The above complaints started shortly after Plaintiff Egan's return from leave in April 2020 and continued until her unlawful termination.

126.    Stieve refused to address Plaintiff Egan's complaints or take any actions to remedy the unlawful pay practices.

127.    After working an obscene amount of unpaid overtime since her return from protected medical leave, in September 2020, Plaintiff Egan complained to Czubachowski about the substantial number of unpaid overtime hours she had worked.

128.    Plaintiff Egan told Czubachowski that she worked an estimated 275 hours of unpaid overtime just between Spring and Fall 2020 alone.

129.    Additionally, throughout the entirety of Plaintiff Egan's employment, she has estimated that she worked 703 unpaid overtime hours.

130.    Czubachowski refused to properly compensate Plaintiff Egan for any overtime hours worked.

131.    Instead of properly compensating Plaintiff Egan overtime, Czubachowski told Plaintiff Egan that he would credit her with 8 hours of straight time that she could bill Regeneron at a later date.

132.    In February 2021, Plaintiff Egan learned she needed medical treatments that required her to attend doctor's appointments during workhours.

133.    In February 2021, Plaintiff Egan had a 1:1 meeting with Czubachowski.

134. During the 1:1 meeting, Plaintiff Egan asked to utilize a portion of the 8 hours of straight time that Czubachowski provided her in Fall 2020 for her doctor's appointments.

135. Plaintiff Egan had worked hundreds of unpaid overtime hours with the expectation that those hours—including, but not limited to, the 8 hours that Czubachowski specifically approved in September 2020—would later be available to her.

136. Czubachowski responded by telling Plaintiff Egan that the 8 hours he provided her in September 2020 reset to zero at the start of the calendar year, as did the 275 hours she reported in the fall and the other several hundred unpaid overtime hours that she worked since she was first hired in March of 2019.

137. Czubachowski also told Plaintiff Egan that he expected her to continue working unpaid overtime hours, including attending every after-hours meeting.

138. Czubachowski then demanded that Plaintiff Egan "stop asking about overtime" and threatened to end the "giveback program" for all consultants in her group if she continued to complain.

139. Czubachowski told Plaintiff Egan he was "pissed" that she complained of wage and hour violations during their February 1:1 meeting.

140. Following Plaintiff Egan's February meeting with Czubachowski, Defendants began a clear campaign of blatant retaliation to rid themselves of Plaintiff Egan in an effort to silence her from further complaints.

141. Shortly after Plaintiff Egan questioned Defendants' unlawful pay practices during the February meeting, she was disciplined for using paid leave to which she was statutorily entitled pursuant to the New Jersey Earned Sick Leave Law.

16

142.     Stieve informed Plaintiff Egan that Czubachowski and Cantarella had informed MMI that Plaintiff Egan submitted incorrect time sheets related to her leave.

143.     The actions of Czubachowski and Cantarella were clearly retaliatory as Plaintiff Egan had followed Defendants' policies and procedures in requesting and taking sick leave.

144.     Plaintiff Egan explained to Stieve that she complied with Defendants' directives when she submitted her time sheets.

145.     Plaintiff Egan again complained to Stieve about the substantial number of unpaid overtime hours she was required to work, and that Regeneron refused to approve any timesheets reflecting more than 40 hours in a workweek.

146.     Rather than attempt to remedy the unlawful pay practices, Stieve merely warned Plaintiff Egan to "be careful" and directed her to remain silent if she wanted to keep her job at Regeneron.

147.     Despite the warnings from Regeneron and MMI to cease questioning Defendants' unlawful pay practices, Plaintiff Egan continued to object to the unlawful pay practices.

148.     Plaintiff Egan asked Czubachowski to discuss the pay issues during the next team meeting, and Czubachowsi tentatively agreed.

149.     However, Czubachowski abruptly canceled the upcoming team meeting, and Plaintiff Egan was unable to address the pay issue and discuss her complaints with her coworkers.

150.     On March 17, 2021, Defendants summarily terminated Plaintiff Egan, effective March 19, 2021.

151.     Defendants terminated Plaintiff in retaliation for her complaints of pay violations.

152.    Significantly, Defendants first purported to have terminated Plaintiff Egan for "budget issues", however after Plaintiff Egan questioned these alleged budget issues, the reason for her termination was changed to "oversight issues".

153.    Such ever-changing reasons were clearly pretextual as Plaintiff Egan was the only employee affected by the purported "budget issues".

154.    Further, Plaintiff Egan received numerous accolades and positive feedback throughout her employment, right up to her termination.

155.    Following notice of Plaintiff Egan's termination, during her last 48 hours of employment, Plaintiff Egan was forced to work 12-hours days to ensure a smooth transition following her departure.

156.    Defendants again refused to compensate Plaintiff Egan for any hours worked beyond 8 each day.

**Plaintiff Dunklin-Dorazio's Complaints and Retaliation**

157.    Similar to Plaintiff Egan, Plaintiff Dunklin-Dorazio also worked extensive overtime hours throughout her employment with Defendants.

158.    From the start of Plaintiff Dunklin-Dorazio's employment, she regularly complained about the unpaid overtime hours to Stieve during their regular meetings.

159.    Stieve responded to Plaintiff Dunklin-Dorazio's complaints by threatening Plaintiff Dunklin-Dorazio's job with Regeneron and directing Plaintiff Dunklin-Dorazio's to continue working the same hours in exchange for job security.

160.    Fearful of losing her position, Plaintiff Dunklin-Dorazio continued to work unpaid overtime without requesting compensation for those hours.

161. However, in a meeting in February 2021, Cantarella acknowledged the substantial number of overtime hours Plaintiff Dunklin-Dorazio had worked.

162. Specifically, in February 2021, Cantarella held a team meeting during which he falsely insisted that work assignments can be completed within a 45-hour workweek.

163. Following the team meeting, Plaintiff Dunklin-Dorazio called Cantarella and complained that he was misleading the new hires into thinking that their work assignments can be completed within a 45-hour workweek, just as she was initially misled into believing that overtime would be rare.

164. In response to Plaintiff Dunklin-Dorazio's complaints, Cantarella acknowledged that Plaintiff Dunklin-Dorazio and Art Drury, her counterpart on another project, were "different" from other employees in that he knew they had been required to work an unusually excessive amount of overtime because of their projects' demands.

165. Cantarella then represented to Plaintiff Dunklin-Dorazio that the Companies intended to "address" her excess overtime hours.

166. Subsequently, on February 16, 2021, Cantarella promised to figure out an "equitable solution" to compensate Plaintiff Dunklin-Dorazio for her unpaid overtime hours.

167. Plaintiff Dunklin-Dorazio heard nothing further from Defendants.

168. In early March 2021 during a 1:1 meeting between Plaintiff Dunklin-Dorazio and Cantarella, Plaintiff Dunklin-Dorazio asked when she could expect to be paid for unpaid overtime hours, as he had promised to do.

169. Cantarella indicated that he had not yet spoken with Defendants' management, but that he intended to do so and compensate her appropriately.

170.    Despite his assurances, Cantarella never followed up with Plaintiff Dunklin-Dorazio following the meeting. Accordingly,

171.    Plaintiff Dunklin-Dorazio again asked Cantarella about the status of her unpaid overtime hours during their next 1:1 meeting on March 30, 2021.

172.    In response to Plaintiff Dunklin-Dorazio's repeated complaints, Cantarella immediately became irritable and annoyed.

173.    Cantarella suddenly began berating Plaintiff Dunklin-Dorazio for her work performance, falsely alleging that she only needed to work overtime because she was underperforming.

174.    Prior to Plaintiff Dunklin-Dorazio's complaints, Cantarella had only ever complimented her efforts and offered her praise.

175.    As it was clear Cantarella was not interested in finding an "equitable solution" for Plaintiff Dunklin-Dorazio, she followed up with Stieve about the status of her unpaid overtime hours.

176.    Stieve also refused to help Plaintiff Dunklin-Dorazio recover compensation for her overtime hours, and Stieve simply directed Plaintiff Dunklin-Dorazio to resolve the issue on her own with Cantarella.

177.    Following Stieve's instructions, Plaintiff Dunklin-Dorazio again asked Mr. Cantarella about her unpaid overtime during the next 1:1 meeting with Mr. Cantarella on April 12, 2021.

178.    Cantarella directed Plaintiff Dunklin-Dorazio to provide Stieve with an accounting of her overtime hours, but otherwise offered no assistance.

179.    Thus, Plaintiff Dunklin-Dorazio provided Stieve with a detailed accounting of her unpaid overtime hours from 2020 and 2021, totaling 860 hours.

180.    Plaintiff Dunklin-Dorazio explained to Stieve that the accounting only included hours she worked in excess of 45 in a week because Defendants mandated that her workweek was 45 hours.

181.    The following day, Plaintiff Dunklin-Dorazio spoke with Stieve about payment for the hours she submitted, and Stieve indicated that she would discuss it with Cantarella.

182.    However, Plaintiff Dunklin-Dorazio again heard nothing in response, and she was forced to follow up with Cantarella on April 27, 2021.

183.    Cantarella became increasingly more hostile toward Plaintiff Dunklin-Dorazio as she continued to seek payment for her overtime.

184.    Instead of compensating Plaintiff Dunklin-Dorazio for her time, Cantarella again criticized her work ethic and job performance.

185.    Plaintiff Dunklin-Dorazio understood then that he did not intend to properly compensate her for the overtime hours she worked.

186.    Just two days later, on April 29, 2021, Mr. Cantarella inexplicably directed Plaintiff Dunklin-Dorazio to "bill him" an additional ten hours per week for six weeks and said that "[He] wish it could have been more."

187.    Plaintiff Dunklin-Dorazio followed up with Stieve and asked why she was being instructed to "bill" Mr. Cantarella for 60 hours and was not being compensated for all overtime hours.

188.    Stieve simply referred her to Dawn Ponico, MMI's Vice President of Human Resources.

21

189.   Ponico questioned Plaintiff Dunklin-Dorazio's accounting of her hours but has not otherwise helped her recover owed wages.

190.   Rather than properly compensate Plaintiff Dunklin-Dorazio, Defendants have continued to harass and intimidate Plaintiff Dunklin-Dorazio from inquiring into her unpaid overtime hours.

191.   On June 3, 2021, following a meeting in which Cantarella announced that employees were now expected to work 50 hours per week, Plaintiff Dunklin-Dorazio emailed Cantarella confirming that he told her that he now considered the workweek to be 50 hours.

192.   Cantarella responded to the email, copying senior leadership at Regeneron, denying everything he previously said and disparaging her character to Defendants' management and senior leadership.

193.   Accordingly, on June 13, 2021, Plaintiff Dunklin-Dorazio complained to Ponico of retaliation, reiterating that Defendants were fully aware that she worked the overtime hours for which they are refusing to pay her.

194.   To date, Plaintiff Dunklin-Dorazio has not been compensated at all for her overtime hours, and Defendants have continued to retaliate against her by, inter alia, subjecting her to heightened scrutiny.

195.   In October 2021, Plaintiff Dunklin-Dorazio made a work-related request for certain documents at the direction of Kevin Tucker, Director at Regeneron.

196.   Unbeknownst to Plaintiff Dunklin-Dorazio, her request was reported back to Cantarella who, in response, sent an email to Plaintiff Dunklin-Dorazio's entire team insinuating that Plaintiff Dunklin-Dorazio was somehow requesting the information for nefarious purposes and, further, was violating Regeneron's confidentiality policies.

197.     Such allegations were clearly false and asserted in retaliation for her complaints of overtime violations.

198.     On November 10, 2021, Plaintiff Dunklin-Dorazio had a meeting scheduled with Cantarella.

199.     Prior to the start of the November 10, 2021 meeting, Plaintiff Dunklin-Dorazio informed Cantarella that she had already worked more than 8 hours in the day and so would work overtime hours for the week if she was required to participate in the scheduled meeting.

200.     Cantarella did not offer to compensate Plaintiff Dunklin-Dorazio any overtime for the hours worked during their November 10, 2021 meeting and, instead, required her to attend the meeting without any compensation for her time.

201.     Cantarella directly Plaintiff Dunklin-Dorazio to attend the meeting and work unpaid hours in retaliation for her complaints of overtime violations.

202.     Subsequently, on November 17, 2021, Plaintiff Dunklin-Dorazio met with Cantarella and Amy Jepson, Director of Regeneron.

203.     During the meeting, Cantarella exclaimed to Ms. Jepson that Plaintiff Dunklin-Dorazio had exhibited a pattern of misrepresenting what Cantarella has previously said, and that Plaintiff Dunklin-Dorazio was not able to perform certain tasks.

204.     Cantarella made those statements to Ms. Jepson to purposefully to harass, humiliate, and embarrass Plaintiff Dunklin-Dorazio in front of a business partner.

205.     Cantarella made those statements in retaliation to Plaintiff Dunklin-Dorazio's complaints of overtime violations.

**Defendants' Violations of the PSLL**

206.    MMI failed to provide Plaintiffs and other MMI employees with the statutorily required notice of their right to take paid sick leave.

207.    As a result, Plaintiffs and their coworkers were unaware that they were entitled to paid sick leave until Plaintiff Egan independently learned of her rights in April 2020—approximately a year and a half after the law went into effect—and requested to be paid pursuant to the law.

208.    Initially, MMI refused to compensate Plaintiff Egan for her sick leave.

209.    However, after Plaintiff Egan persisted, MMI eventually acquiesced and provided Plaintiff Egan with the statutory paid leave.

210.    In or about October 2020, Plaintiff Egan asked her coworkers, including Plaintiff Dunklin-Dorazio, how to account for PSLL time on the timesheet.

211.    As none of Plaintiff Egan's coworkers were aware of their right to take PSLL, Plaintiff Egan was the first to alert them of their right to paid sick leave.

212.    In fact, Plaintiff Egan, Plaintiff Dunklin-Dorazio, and their coworkers held a meeting to discuss their right to paid sick leave under the law because MMI never informed them of their rights despite its legal obligation to do so.

213.    Plaintiff Dunklin-Dorazio learned that she was entitled to paid sick leave from Plaintiff Egan.

214.    In October 2020, Plaintiff Dunklin-Dorazio requested to take her statutorily provided paid sick leave.

215.    In response to Plaintiff Dunklin-Dorazio's request for paid sick leave, MMI summarily denied that she was entitled to paid leave and refused to compensate her pursuant to the law.

216.    To date, MMI has not compensated her for any sick leave, despite Plaintiff Dunklin-Dorazio's repeated requests.

217.    After Plaintiff Egan requested paid leave and informed her coworkers of their rights, MMI began retaliating against Plaintiff Egan.

218.    Stieve became angered at Egan because her coworkers began to request paid sick leave pursuant to PSLL.

219.    MMI blamed Plaintiff Egan for other MMI employees requesting paid leave. The retaliation and harassment continued to escalate, ultimately culminating in Plaintiff Egan's unlawful termination on March 19, 2021.

220.    Plaintiff Egan was terminated in retaliation for engaging in protected activity pursuant to PSLL.

**The Parties' Tolling Agreements**

221.    Plaintiff Egan, Defendant MMI, and Defendant Regeneron entered into a tolling agreement, tolling all statute of limitations from August 4, 2021 until November 2, 2021 for any and all Claims Plaintiff Egan may have against Defendant MMI and Defendant Regeneron.

222.    Plaintiff Dunklin-Dorazio, Defendant MMI, and Defendant Regeneron entered into a tolling agreement, tolling all statute of limitations from August 4, 2021 until November 2, 2021 for any and all Claims Plaintiff Dunklin-Dorazio may have against Defendant MMI and Defendant Regeneron.

**FIRST CLAIM FOR RELIEF**
**Violations of the NJWPL and NJWHL - Unpaid Wages**
**(On Behalf of Plaintiff Egan and Plaintiff Dunklin-Dorazio Against All Defendants)**

223.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

224.    Plaintiff Egan worked in New Jersey throughout her employment with Defendants and was an employee under the NJWPL and NJWHL.

225.    Plaintiff Dunklin-Dorazio primarily worked in New Jersey from 2018 until late 2019, continued to work in New Jersey approximately two days per week from later 2019 until March 2020, and has worked entirely in New Jersey from March 2020 to the present.

226.    Plaintiff Dunklin-Dorazio is an employee under the NJWPL and NJWHL.

227.    During the statute of limitations period covered by these claims, Plaintiffs worked hours for which they were not paid.

228.    During the statute of limitations period covered by these claims, Plaintiffs worked hours over forty (40) per week for which they were not paid overtime premiums.

229.    At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiffs the regular hourly rate for work done in their employment.

230.    At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiffs at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek and for paying Plaintiffs for all the hours they worked, and willfully failing to keep records required by NJWPL and NJWHL.

231.    Defendants' failure to comply with the NJWPL and NJWHL caused Plaintiffs to suffer loss of wages and interest thereon.

26

232.    Due to Defendants' violations of NJWHL and NJWPL, Plaintiffs are entitled to recover from Defendants lost wages, including front pay and back pay, unpaid wages and interest owed on unpaid wages held by Defendants over an extended period of time, liquidated damages equal to not more than 200 percent of the wages due, as well as reasonable attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF THE NJWHL – RETALIATION
**(On Behalf of Plaintiff Egan and Plaintiff Dunklin-Dorazio Against All Defendants)**

233.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

234.    As a direct and proximate result of Plaintiffs' complaints to Defendants that they were being denied overtime pay, Defendants retaliated against Plaintiffs.

235.    Defendants retaliated against Plaintiff Egan by subjecting her to harassment and by terminating her employment.

236.    Defendants retaliated against Plaintiff Dunklin-Dorazio by subjecting her to harassment.

237.    Plaintiffs seek damages as provided by the NJWHL for Defendants' retaliatory conduct, including punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### VIOLATIONS OF THE FLSA – UNPAID WAGES
**(On Behalf of Plaintiff Egan and Plaintiff Dunklin-Dorazio Against All Defendants)**

238.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

27

239.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

240.     At all relevant times, Defendants employed employees, including Plaintiffs.

241.     During the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

242.     At all times relevant to this Complaint, Plaintiffs were not exempt from overtime under the Fair Labor Standards Act.

243.     At all times relevant to this Complaint, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay employees, including Plaintiffs, overtime pay.

244.     Plaintiffs seek damages in the amount of their unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for hourly wage and overtime wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF THE FLSA – RETALIATION
**(On Behalf of Plaintiff Egan and Plaintiff Dunklin-Dorazio Against All Defendants)**

245.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

246.     As a direct and proximate result of Plaintiffs' complaints to Defendants that they were being denied overtime pay, Defendants retaliated against Plaintiffs.

247.   Defendants retaliated against Plaintiff Egan by subjecting her to harassment and by terminating her employment.

248.   Defendants retaliated against Plaintiff Dunklin-Dorazio by subjecting her to harassment.

249.   Plaintiffs seek damages as provided by the FLSA for Defendants' retaliatory conduct, including punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE PSLL**
**(On Behalf of Plaintiff Dunklin-Dorazio Against All Defendants)**

250.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

251.   The PSLL requires employers to provide employees with up to 40 hours of paid sick leave in any period of 12 consecutive months.

252.   Plaintiff Dunklin-Dorazio requested paid sick leave pursuant to the PSLL.

253.   Defendants failed to provide Plaintiff Dunklin-Doraizo with paid sick leave pursuant to the PSLL.

254.   By failing to provide Plaintiff Dunklin-Dorazio with paid sick leave, Defendants violated the PSLL.

255.   Plaintiff Dunklin-Dorazio seeks damages as provided by the PSLL including lost wages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
## VIOLATIONS OF THE PSLL
### (On Behalf of Plaintiff Egan and Plaintiff Dunklin-Dorazio Against All Defendants)

256.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

257.    The PSLL prohibits employers from retaliating against employees for engaging in activities protected under the law including, but not limited to, filing a complaint with the department, cooperating with an investigation, opposing policies and practices that are unlawful under the act, or informing other individuals of their rights under the act.

258.    Plaintiff Egan engaged in activities protected under the PSLL including, but not limited to, informing her coworkers of their rights under the PSLL, requesting paid leave, and objecting policies and practices that are unlawful under the PSLL.

259.    Defendants retaliated against Plaintiff Egan for having engaged in activities protected under the PSLL.

260.    Defendants retaliated against Plaintiff Egan by, inter alia, subjecting her to increased harassment and terminating her employment.

261.    Plaintiff Dunklin-Dorazio engaged in activities protected under the PSLL including, but not limited to, informing her coworkers of their rights under the PSLL, requesting paid leave, and objecting policies and practices that are unlawful under the PSLL.

262.    Defendants retaliated against Plaintiff Dunklin-Dorazio for having engaged in activities protected under the PSLL.

263.    Defendants retaliated against Plaintiff Dunklin-Dorazio by, inter alia, subjecting her to increased harassment and refusing to pay her for earned sick leave.

264.    Plaintiffs seek damages as provided by the PSLL for Defendants' retaliatory conduct, including lost wages, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**DISABILITY DISCRIMINATION IN VIOLATION OF THE NJLAD**
**(On Behalf of Plaintiff Egan Against All Defendants)**

265.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

266.    At all times relevant to this Complaint Defendants were, and continue to be, employers within the meaning of the NJLAD, N.J.S.A. § 10:5-5(e) and employed employees, including Plaintiffs.

267.    The NJLAD makes it unlawful to discriminate against any individual on the basis of age.

268.    Plaintiff Egan is disabled as that term is defined by the NJLAD.

269.    Plaintiff Egan was subjected to harassment and discrimination based on her disability.

270.    The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff Egan's employment and to create a discriminatorily abusive working environment.

271.    At all times relevant to this Complaint, Defendants' discrimination against Plaintiff Egan based on her disability substantially and materially altered Plaintiff Egan's conditions of employment in ways that were adverse to Plaintiff Egan.

31

272.     Defendants discriminated against Plaintiff Egan because of her disability by interfering with her ability to take medical leave, retaliating against her for having taken medical leave, and ultimately, summarily discharging Plaintiff Egan from her employment.

273.     Defendants were aware of, or should have been aware of, and are directly and vicariously responsible for, such hostile work environment.

274.     Defendants engaged in unlawful employment practices and unlawful discriminatory as those terms are defined by the NJLAD, N.J.S.A. 10:5-12.

275.     These acts violate NJLAD and are illegal.

276.     In taking the above-described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff Egan's rights pursuant to NJLAD giving rise to punitive damages.

277.     As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff Egan suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

**<u>EIGHTH CLAIM FOR RELIEF</u>**
**Overtime Violations of the New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.***
**(On Behalf of Plaintiff Dunklin-Dorazio Against All Defendants)**

278.     Plaintiffs repeat and re-allege each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

279.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

280.     While Plaintiff Dunklin-Dorazio worked in Defendants' Tarrytown, New York office, Plaintiff Dunklin-Dorazio was an employee under the NYLL.

281.     During the period of Plaintiff Dunklin-Dorazio's employment with Defendants in which she worked from the Tarrytown, New York office, Defendants willfully, regularly and repeatedly failed to pay Plaintiff for actual time worked at the required overtime rates, one and a half times the minimum wages for hours worked in excess of forty (40) hours per workweek.

282.     Plaintiff Dunklin-Dorazio was not exempt from overtime under New York Labor Law.

283.     As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff Dunklin-Dorazio has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees, pursuant to N.Y. Lab. Law § 663.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief on all Claims for Relief:

A.     Damages in an amount to be determined at trial

B.     All compensatory and economic damages;

C.     All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiffs may show themselves justly entitled;

D.     Liquidated damages.

E.     All punitive and statutory damages authorized by law;

F.     Pre-judgment and post-judgment interest; and

G.     Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right.

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not subject of any other action pending in any Court or of pending arbitration proceeding presently known to the parties and no other action or arbitration is presently contemplated.

## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Michael R. DiChiara, Esq., as trial counsel in this matter.

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff

By: *Michael R. DiChiara*
  Michael R. DiChiara

Dated: 2-25-22

# Civil Case Information Statement

## Case Details: SOMERSET | Civil Part Docket# L-000231-22

**Case Caption:** EGAN WINIFRED  VS REGENERON

**Case Initiation Date:** 02/25/2022

**Attorney Name:** MICHAEL R DI CHIARA

**Firm Name:** KRAKOWER DI CHIARA LLC

**Address:** 333 BLOOMFIELD AVENUE SUITE 202
CALDWELL NJ 07006

**Phone:** 2017466334

**Name of Party:** PLAINTIFF : Egan, Winifred

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Winifred Egan? NO**

**Are sexual abuse claims alleged by: Jennifer Dunklin-Dorazio? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/25/2022
Dated

/s/ MICHAEL R DI CHIARA
Signed

```
SOMERSET COUNTY SUPERIOR COURT
40 NORTH BRIDGE STREET
1ST FLR PO BOX 3000
SOMERVILLE        NJ 08876-1262
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (908) 332-7700
COURT HOURS  8:30 AM - 4:30 PM


                        DATE:   FEBRUARY 25, 2022
                        RE:     EGAN WINIFRED  VS REGENERON
                        DOCKET: SOM L -000231 22


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.


     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE PRETRIAL JUDGE ASSIGNED IS:  HON ROBERT G. WILSON


      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (908) 332-7700 EXT 13236.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                             ATT: MICHAEL R. DI CHIARA
                             KRAKOWER DI CHIARA LLC
                             333 BLOOMFIELD AVENUE
                             SUITE 202
                             CALDWELL       NJ 07006


ECOURTS
```

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------

WINIFRED EGAN and JENNIFER
DUNKLIN-DORAZIO,

              Plaintiffs,

v.

REGENERON PHARMACEUTICALS
INC., MITCHELL MARTIN, INC.,
VINCENT CANTARELLA, Individually,
and ELLEN STIEVE, Individually,

              Defendants.

------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Hon. _____
Case No.: _____


**CONSENT TO REMOVAL BY
DEFENDANTS REGENERON
PHARMACEUTICALS INC. AND
VINCENT CANTARELLA**

      The undersigned counsel for Defendants Regeneron Pharmaceuticals Inc. and Vincent Cantarella (collectively, "Defendants") hereby consent to and join in the removal of this action. Further, by consenting to and joining in the removal of this action, Defendants in no way waive any objection or defense to (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, and (7) failure to join a party under Rule 19 of the Federal Rules of Civil Procedure, or any other defense.

**MORGAN, LEWIS & BOCKIUS, LLP**

By: s/ Ann Marie Effingham
    Ann Marie Effingham
    502 Carnegie Center
    Princeton, NJ 08540-6289
    Telephone: 609.919.6600
    Facsimile: 609.919.6701
    annmarie.effingham@morganlewis.com

    Michael J. Puma, Esq. (pro hac vice
    application pending)
    Shannon N. Attalla, Esq. (pro hac vice
    application pending)
    1701 Market Street
    Philadelphia, Pennsylvania 19103
    Telephone: (215) 963-5305/5452
    *Attorneys for Defendants*

Dated: April 6, 2022

2

# EXHIBIT C

Michael J. Riccobono, Esq.
Cynthia M. Vera, Esq.
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: (973) 656-1600
Fax:  (973) 656-1611
michael.riccobono@ogletree.com
cynthia.vera@ogletree.com
*Attorneys for Defendants*
*Mitchell/Martin, Inc. and Ellen Stieve*

---

| | |
|---|---|
| WINIFRED EGAN and JENNIFER DUNKLIN-DORAZIO,<br><br>Plaintiffs,<br><br>v.<br><br>REGENERON PHARMACEUTICALS INC., MITCHELL MARTIN, INC., VINCENT CANTARELLA, Individually, and ELLEN STIEVE, Individually,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY<br><br>DOCKET NO.: SOM-L-0231-22<br><br>**NOTICE TO STATE COURT OF FILING NOTICE OF REMOVAL** |

---

TO:  Clerk, Superior Court of New Jersey
Law Division, Somerset County
20 North Bridge Street
Somerville, New Jersey 08876

Defendants Mitchell/Martin, Inc. (incorrectly pled as "Mitchell Martin, Inc.") and Ellen Stieve, by and through their counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby give notice that, it has removed this action to the United States District Court for the District of New Jersey, which has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 because the matter involves a federal question.  A true and correct copy of Defendants' Notice of Removal is attached hereto as **Exhibit A**.  Pursuant to 28 U.S.C. § 1446(d), no further proceedings may be held in this Court in this action unless or until the case is remanded.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**


By: */s/ Michael J. Riccobono*
    Michael J. Riccobono, Esq.
    Cynthia M. Vera, Esq.
    10 Madison Avenue, Suite 400
    Morristown, New Jersey 07960
    Telephone: (973) 656-1600

Dated: April 6, 2022